UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Michael A. Artis, Esquire
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone:  (973) 645-3014
Facsimile:  (973) 645-5993
E-mail: michael.a.artis@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| | : | Case No. 19-26413 (CMG) |
| In re | : | Chapter 7 |
| | : | |
| Anthony Capuano, | : | The Honorable Christine M. Gravelle |
| | : | |
| Debtor. | : | Hearing Date: March 3, 2020, at 10:00 a.m. |
| | : | |

**REPLY TO DEBTOR'S OPPOSITION TO THE UNITED STATES
TRUSTEE'S MOTION TO DISMISS CASE PURSUANT TO 11
U.S.C. § 707(b)(1), BASED ON TOTALITY OF CIRCUMSTANCES
UNDER § 707(b)(3)(B)**

Andrew R. Vara, the United States Trustee ("U.S. Trustee") for Regions 3 and 9, by and through counsel, respectfully submits this Reply to Debtor's Opposition to the United States Trustee's Motion for an Order Dismissing Case Under 11 U.S.C. §707(b)(1), Based on the Totality of the Circumstances of the Debtor's Financial Situation Under 11 U.S.C. § 707(b)(3)(B) (the "Reply").  The Reply is supported by the Certification of Kirsten Ardelean filed in support of this motion.

**BACKGROUND**

On August 26, 2019, the Debtor filed this chapter 7 case.  On November 22, 2019, the

1

U.S. Trustee filed motion to dismiss pursuant to Section 707(b)(3)(B), based on the totality of the circumstances of the Debtor's financial situation.  The U.S. Trustee demonstrated in his moving papers that the Debtor had the ability to pay a 100% dividend to unsecured creditors who hold claims in the amount of $15,804.89.

On January 15, 2020, the Debtor filed opposition which is supported only by a certification of the Debtor and an attached letter from the Debtor's physician.  *See* Docket Entry No. 25.  The Debtor did not submit a memorandum of law or present any legal arguments in support of his opposition.

The Debtor makes three arguments in his certification in opposition to the U. S. Trustee's Motion to Dismiss: **(i)** the initial Schedule J did not include all expenses and on January 4, 2020, a revised Schedule J was filed increasing expenses from $4,235 to $5,253[1]; **(ii)** the initial Schedule I included income from both his primary employment at Northern Monmouth Regional Surgery Center ("NMRSC") and part-time employment at Symphony Diagnostic Services ("SDS"); and **(iii)** as of January 1, 2020, the Debtor took a leave of absence from his part-time job at STS, and due to a change in circumstances he "believes now and going forward . . . . . he will have a monthly deficit of $553 and will have no disposable income . . . to pay nonpriority creditors."

On February 25, 2020, the Debtor filed additional amendments to Schedule A/B, Schedule I, and Schedule J.  *See* Docket Entry No. 28.  Schedule A/B disclosed for the first time that the Debtor has additional assets and income that were not previously disclosed.  Specifically, the amended Schedule A/B disclosed: (i) an ING savings account; (ii) a Fidelity 401(k) account; (iii)

---

[1] The Amended Schedule J increased the Debtor's expenses by $1,018, and thereby reduced the Debtor's monthly disposable income from $1,894 to $876.  See Amended Schedule J, Docket No. 25.

2

a Primerica Educational IRA account; and (iv) a twelve month note with a face value of $7,200 payable to the Debtor at $600 per month.  *See* Id.

The amended Schedule I now discloses the Debtor's primary employer is NMRSC.  *See* Id.  The amended Schedule I made no changes to the Debtor's gross income, payroll deductions, and net take-home pay.  *See* Id.  However, the amended Schedule I also reports for the first time that the Debtor receives other monthly income from "contributions from mom" of $200 per month; and a "Note Receivable from Ron Kazmarski" of $600 per month.  *See* Id.

On the 2nd amended Schedule J, the Debtor increased the amounts for previously disclosed expenses, and also reported new expenses that were not previously disclosed for: **(i)** "Deposit to Savings" ($153), **(ii)** "Gifts for family/Amazon" ($766), **(iii)** Deposit to Primerica 529" ($33), and **(iv)** "EZ Pass" ($57).  After subtracting monthly expenses from the amended Schedule I, the Debtor reports that he now has a monthly deficit of $-13.00.  *See* Id.

## ARGUMENT

**I.     The Debtor's Chapter 7 Case Should be Dismissed for Abuse Pursuant to § 707(b)(3) because the United States Trustee has met his Initial Burden and the Debtor Has Failed to Carry his Burden of Demonstrating "Changed Circumstances"**

The United States Trustee has the initial burden of establishing a prima facie case that allowing the Debtor to continue in chapter 7 would be an abuse of that chapter.  *In re Cardona-Pereira*, 2010 Bankr. LEXIS 643, *14 (Bankr. D.N.J. Feb. 4, 2010).  A prima facie showing is "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."  *In re Williams*, 424 B.R. 207, 211 (Bankr. W.D. Va. 2010) (*quoting* Black's Law Dictionary 1189 (8th ed. 1994).  The United States Trustee can satisfy his burden by producing evidence to show the debtor has the ability to make a non-trivial payment on his unsecured debt.  *In re Cardona-Pereira*, 2010 Bankr. LEXIS 643 at *14.  Once the United States Trustee satisfies his initial

3

prima facie burden, the burden then shifts to the Debtor to demonstrate that his case is not an abuse of chapter 7. *Id.*

**A. The United States Trustee has Carried His Burden in Making a Prima Facie Case for Abuse Under § 707(b)(3)**

The Debtor's initial Schedule J disclosed that the Debtor has a monthly income surplus of over $1,894. On January 4, 2020, the Debtor filed amended Schedule J that increased his expenses from $4,235 to $5,253. The Debtor's amended Schedule J discloses that the Debtor has a revised monthly income surplus of $876. As set forth above, on February 24, 2020, the Debtor filed a second amended Schedule J further increasing monthly expenses resulting in a monthly deficit of $-13.00. As set forth below, with minor adjustments to the Debtor's revised budget, he can still pay his modest creditors a 100% dividend to unsecured creditors.

**B. The Debtor's Second Amended Schedules Have Failed to Rebut the United States Trustee's Prima Facie Case for Abuse by Demonstrating a Change in Circumstances and Appear to Evidence Bad Faith**

To rebut a prima facie case by the United States Trustee, the Debtor must show that based on the totality of the circumstances, his case is not an abuse of chapter 7. Courts consider numerous factors in determining whether a case constitutes an abuse, including: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statements of current income and expenditures reasonably and accurately reflect his true financial condition; (5) whether the bankruptcy petition was filed in bad faith; (6) whether the debtor had engaged in eve of bankruptcy purchases; (7) whether the debtor enjoys a stable source of future income; (8) whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code; (9) whether there are state remedies with the potential to ease his financial

predicament; (10) the degree of relief obtainable through private negotiations; and (11) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities. *In re Miller,* 302 B.R. 495 (Bankr.M.D.Pa.2003).

Here, the Debtor does not provide any persuasive evidence showing that his case is not an abuse of chapter 7 when looking at the totality of his financial circumstances. In particular, the Debtor has failed to rebut the evidence showing that he has an ability to pay his creditors. If anything, the Debtor's numerous amendments to his schedules and his certification in opposition raise more questions than they answer and are admissions that he has omitted material information from creditors and the case trustee regarding his income, assets and financial affairs.

First, while the Debtor may have suffered from a heart condition, he has presented no competent evidence that his income has declined. On February 12, 2020, the U.S. Trustee conducted the Debtor's Rule 2004 examination. The Debtor testified that he was still working at NMRSC and SDS. At the 341 Meeting of creditors, the Debtor testified his schedules were accurate. In addition, at the 341 Meeting, the Debtor answered "no" to the case trustee's question as to whether the Debtor contemplated any additions, deletions or modifications to his schedules. Moreover, the Debtor's pay advices and bank statements do not reflect a reduction in his income.

Second, the Debtor has not made consumer purchases far in excess of his ability to repay. On Schedule E/F, the Debtor lists five unsecured nonpriority claims which total $15,804.89. The only non-credit card debt is a single medical debt of $930.89. The Debtor's unsecured debts are not excessive and with a modest adjustment to his budget, he could clearly pay a significant dividend to unsecured creditors.

Third, the Debtor's proposed family budget is excessive and unreasonable. As set forth above, the Debtor has filed three different versions of his monthly expenses. The Debtor's

original Schedule J reported monthly expenses of $4,235 and disposable income of $1,894 per month. On January 4, 2010, the Debtor amended Schedule J and swore under the penalty of perjury that his expenses had increased to $5,253 and his disposable income was reduced to $876. This figure was further corroborated by paragraph 3 of the Debtor's certification in which he swore in paragraph 3: "The revised Schedule J . . . increased my monthly expenses to $5,253 from an initially filed Schedule J of $4,235." *See* Docket Entry 25. Now, contrary to his sworn certification, on February 24, 2020, the Debtor filed a 2nd amended Schedule J further increasing his expenses from $5,253 to $6,942 which resulted in an elimination of all disposable income.

A review of the Debtor's 2nd amended Schedule J reflects that his expenses increased for previously disclosed expenses, and he also reports new expenses that were not previously disclosed. For example, the Debtor's food expense increased from $500 to $1,255. The Debtor's childcare and children's education cost expense also increased from $150 to $850. The Debtor also listed new expenses for **(i)** Deposit to savings - $153; **(ii)** Gifts for family/Amazon - $766; **(iii)** Deposit to Primerica 529 - $33; and **(iv)** EZ Pass - $57. The Debtor has not provided support for any of these expenses. Further, the Debtor could easily trim these expenses without impacting his basic necessities.[2]

It is also noteworthy that the numerous amendments only came about after the U.S. Trustee moved to dismiss the Debtor's case for abuse. Had this not happened, the Debtor would have allowed his originally filed schedules to remain uncorrected for his benefit. Moreover, the excuses offered by the Debtor of misestimating and accidental omission are insufficient to

---

[2] The U.S. Trustee is not contending that the Debtor is living an extravagant lifestyle. However, whether the Debtor leads an extravagant lifestyle is not the focus of § 707(b) inquiry. A § 707(b) inquiry is focused upon examining the totality of circumstances to see whether the Debtor has an ability to pay his creditors without impacting the Debtor's basic needs.

overcome the sworn statements before the Court. Even if the Court were to accept the Debtor's most recent version of Schedule J, a simple reduction in his monthly expenses for food, gifts, and "Deposit to Savings" would produce a monthly surplus that would pay all or a significant distribution to unsecured creditors. As the Debtor's has not provided any support for his amendments and his amended Schedules do not support the assertions in paragraph 6 of his certification that he has a monthly deficit $553, the Debtor has not met his shifted burden of proof and this case should be dismissed.

Fourth, Fifth and Eleventh Factors: The Debtor's schedules and statements of current income and expenditures do not reasonably and accurately reflect the Debtor's true financial condition and are indicative of bad faith. The Debtor's numerous amendments, misstatements, and omissions on Schedules A/B, Schedule I, and Schedule J reflect the Debtor's schedules were filed recklessly without attention to detail. It is particularly troubling that the Debtor attended the 341 Meeting and failed to inform the case trustee about his interest in **(i)** a ING savings account; **(ii)** a Fidelity 401(k) account; **(iii)** a Primerica Educational IRA account; and **(iv)** a twelve month note with a face value of $7,200 payable to the Debtor at $600 per month.

Moreover, in paragraph 4 of his certification, the Debtor states: "[m]y initial filing included income from both my primary employment at Northern Monmouth Regional Surgery Center and my part-time employment at Symphony Diagnostic Services." However, this statement is not supported by the record. The initial Schedule I only included the Debtor's income from the Debtor's part-time employer, SDS. There is no disclosure of any additional employment or monthly income on the initial Schedule I. In fact, line 8h, "Other monthly income" is blank.

The Debtor next states in paragraph 5 of his certification that he underwent heart surgery

7

on October 11, 2019, and as of January 1, 2010, he took a leave of absence from his second job at SDS. The Debtor further states "I can only work forty hours per week, not the sixty I was working between the two jobs." However, in support of his argument that he has to reduce his work hours, the Debtor attached to his certification, a letter from his cardiologist, Dr. Thomas F. Rizzo, MD, that states in paragraph 3: *"The patient can continue to work without restrictions."* Accordingly, it is clear from the record that the Debtor has not provided complete, accurate, and competent schedules in support of his financial condition.

Sixth factor: There is no evidence that the Debtor engaged in eve of bankruptcy purchases.

Seventh and Eighth Factors: The Debtor enjoys a stable source of future income as he has been employed for the past 22 years by NMRSC and has not provided any evidence that his employment will discontinue. The U.S. Trustee does not know how long he has been employed by SDS, but the Debtor has also not produced any evidence that his job is subject to termination. The Debtor is also eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code.

Ninth and Tenth Factors: There is no evidence of whether there are state remedies with the potential to ease the Debtor's financial predicament; or the degree of relief obtainable through private negotiations.

## **CONCLUSION**

For the reasons set forth above, the United States Trustee requests the entry of an Order overruling the Debtor's opposition and dismissing this chapter 7 case pursuant to 11 U.S.C. § 707(b)(1), based on the totality of circumstances under § 707(b)(3)(B).

8

        Respectfully submitted,

        ANDREW R. VARA
        UNITED STATES TRUSTEE
        REGION 3 & 9

    By:  <u>/s/ Michael Artis</u>
         Michael Artis
         Trial Attorney

Dated: February 26, 2020